UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL, II,

       Plaintiff,

v.

NORBERT FRONCZAK,

       Defendant.

Case No. 23-cv-11123

Honorable Robert J. White

Magistrate Judge Curtis Ivy, Jr.

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    <u>Introduction</u>

Robert Annabel, II is currently incarcerated with the Michigan Department of Corrections. He commenced this 42 U.S.C. § 1983 action against Robert Fronczak, the assistant law librarian at the Macomb Correctional Facility. The amended complaint alleges, among other things, that Fronczak violated the First Amendment to the United States Constitution when he issued Annabel misconduct tickets and barred him from accessing the prison law library in retaliation for filing grievances against both Fronczak and other prison officials.

Before the Court is the magistrate judge's January 14, 2026 report and recommendation. (ECF No. 73).  The report recommended that the Court grant Fronczak's motion for summary judgment. (ECF No. 64).  Annabel timely objected to the report and recommendation pursuant to Fed. R. Civ. P. 72(b)(2). (ECF No. 74).  Fronczak did not respond in opposition.

For the following reasons, (1) Annabel's objections to January 14, 2026 report and recommendation are sustained in part and overruled in part, (2) the report and recommendation is accepted and adopted in part and rejected in part, and (3) Fronczak's motion for summary judgment is granted.

II.    Background

Since Annabel does not object to the material portions of the magistrate judge's factual summary, the Court finds that the recitation of the underlying allegations is accurate, and it will adopt the magistrate judge's summary of those allegations as they appear in the report and recommendation. (ECF No. 73, PageID.878-81).

III.   Legal Standards

District judges review *de novo* any part of the magistrate judge's recommended disposition "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).  "In conducting a de novo review," however, "the district court is not constrained by the parties' objections." *Childrey*

*v. Chater*, No. 95-1353, 1996 U.S. App. LEXIS 44857, at *3 n.1 (6th Cir. Jul. 25, 1996). Although the Federal Magistrates Act "does not require" a district judge "to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Instead, "the discretion Article III requires with respect to dispositive matters permits the district judge to decide such an issue in any way he or she deems proper, and to reject, or pay no attention whatsoever to, the magistrate judge's findings." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3070.2 (3d ed. Apr. 2026 Update).

IV.     Analysis

Annabel raises three objections to the report and recommendation. The Court will sustain the first objection and overrule the remaining two.

  A.     *Exhaustion*

Annabel first contends that the magistrate judge improperly concluded that he failed to exhaust his administrative remedies concerning the misconduct ticket that Fronczak issued to him after the December 13, 2022 law library incident. (ECF No. 74, PageID.906-09).

Defendants carry the burden of proof on the question of exhaustion. *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023). That means they bear an "initial

summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quotation omitted); *see also Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012).  Summary judgment is warranted in this setting only if "there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Doe*, 945 F.3d at 961.

Inmates may not challenge their confinement conditions pursuant to 42 U.S.C. § 1983 unless "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prison grievance procedures are not "available" when prison officials are "unable or consistently unwilling to provide relief, a process is so opaque as to be incapable of use, or prison employees thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Morgan*, 67 F.4th at 367 (internal quotation marks omitted); *see also Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

Annabel attests that he accepted responsibility for a reduced Class III misconduct charge stemming from the December 13, 2022 law library incident – and, as a result, did not exhaust his administrative remedies to challenge the ticket – because Sergeant Slater assured him falsely that he would retain his law library access privileges. (ECF No. 7, PageID.53-54, ¶¶ 18-19; ECF No. 66, PageID.767, ¶ 4).  And in response, Fronczak fails to (1) rebut this showing with admissible

4

evidence to the contrary, or (2) demonstrate that Annabel already knew that accepting responsibility for a Class III misconduct violation could result in the revocation of his law library access privileges. *See Ali v. Simmons*, No. 21-1829, 2023 U.S. App. LEXIS 15683, at *7-8 (6th Cir. Apr. 4, 2023) (holding that incorrect guidance from a prison official did not qualify as a misrepresentation of the grievance process where the inmate was independently aware of the correct procedures).

Because Fronczak fails to carry his burden of showing the absence of a genuine factual question as to whether Annabel administratively exhausted the portion of his First Amendment relation claim stemming from the December 13, 2022 law library incident, he is not entitled to summary judgment on exhaustion grounds.  Annabel's first objection is sustained and the related portion of the report and recommendation is rejected.

### B.	*First Amendment Retaliation*

Annabel's next two objections take aim at the factual findings and legal conclusions supporting the magistrate judge's recommendation to dismiss the First Amendment retaliation claim. (ECF No. 74, PageID.909-15).

To establish a First Amendment retaliation claim, the plaintiff must demonstrate that (1) he engaged in conduct protected under the First Amendment, (2) he suffered an adverse action "that would deter a person of ordinary firmness

from continuing to engage in that conduct," and (3) "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

The United States Court of Appeals for the Sixth Circuit employs a burden-shifting framework to assess the motivation behind an adverse action, *i.e.*, the third element. *See Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018).  The plaintiff carries the initial burden of showing that "his protected conduct was a motivating factor behind" the adverse action. *Id.* (quotation omitted).  If this threshold is satisfied, "the burden of production shifts to the defendant." *Id.* (quotation omitted). The defendant must then establish that "he would have taken the same action in the absence of the protected activity" in order to "prevail on summary judgment." *Id.* (quotation omitted); *see also Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).  This second step requires proof amounting to a preponderance of the evidence. *Maben*, 887 F.3d at 262; *see also King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012).  Among other things, prison officials may point to an inmate's "disruptive behavior" as an appropriate "reason for taking action." *Maben*, 887 F.3d at 262 (quotation omitted).

### 1.      December 13, 2022 Law Library Incident

Annabel claims that Fronczak issued him a misconduct ticket for wearing a jacket in the law library in retaliation for filing grievances against other prison

officials and for verbally complaining about Fronczak to two corrections officers. (ECF No. 7, PageID.55, ¶ 25; ECF No. 66, PageID.773-74, ¶ 3, PageID.776, ¶ 3, PageID.778-79, ¶ 3).

The first two elements of First Amendment retaliation appear to be met.  The record indicates that Annabel had filed grievances against other prison officials before the December 13, 2022 incident – conduct that the First Amendment protects. (ECF No. 7, PageID.55, ¶ 25; ECF No. 66, PageID.773-74, ¶ 3, PageID.776, ¶ 3, PageID.778-79, ¶ 3).  *See Maben*, 887 F.3d at 264 (the filing of non-frivolous grievances is protected conduct).  And Fronczak did issue him a misconduct ticket for wearing a jacket in the law library. (ECF No. 64-2, PageID.533).  *See King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005) ("Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges.").  The remaining question is whether Annabel's grievances played a motivating factor in Fronczak's decision to issue him a misconduct ticket. Enter the burden-shifting framework.

Annabel satisfies his initial showing by submitting declarations from other inmates who heard Fronczak say that he intended to issue Annabel a misconduct ticket because "he whined to officers and a sergeant and writes too many grievances." (ECF No. 66, PageID.773-74, ¶ 3, PageID.776, ¶ 3, PageID.778-79, ¶ 3).  But Fronczak counters with evidence showing that he would have issued the

misconduct ticket regardless of Annabel's protected activity, *i.e.*, filing grievances against other prison officials.

Fronczak's misconduct report describes how Annabel violated the rule prohibiting inmates from wearing hats, headgear or jackets while in the prison law library, even though "signs are posted around the library as a reminder." (ECF No. 64-2, PageID.533). Fronczak's own declaration states, in relevant part, that:

> 5.     In December 2022, I wrote a misconduct ticket on Plaintiff Annabel for disobeying a direct order for failing to remove his coat while in the library when ordered to do so. Everything I wrote in the misconduct ticket was true and accurate. I wrote the misconduct ticket irrespective of any complaints or grievances by Plaintiff Annabel. I would have written the misconduct ticket whether he complained to MDOC staff or filed grievances or not.

(ECF No. 64-6, PageID.566). And Annabel, for his part, does not contest that he violated the library's rules against outerwear. He only disputes Fronczak's account of their altercation, claiming that he removed his jacket immediately after Fronczak yelled at him. (ECF No. 7, PageID.52, ¶ 10; ECF No. 66, PageID.766, ¶ 3).

Viewed together in Annabel's favor, the uncontested portions of the record demonstrate – by a preponderance of the evidence – that Fronczak "would have" issued Annabel the misconduct ticket even "in the absence of" his previous grievances against other prison officials. *See Bey v. Hissong*, No. 21-2883, 2022 U.S. App. LEXIS 10490, at *11-12 (6th Cir. Apr. 19, 2022) (ruling that the inmate's uncontested violation of prison rules, coupled with the prison official's sworn

8

statement that he would have issued the misconduct ticket "with any prisoner, regardless of any grievance or any other factor," was sufficient to demonstrate non-retaliatory motive); *see also Ehrlich v. Kovack*, 710 F. App'x 646, 650-52 (6th Cir. 2017) (no evidence of retaliatory motive where the plaintiff "engaged in terminable behavior" and she "ha[d] not identified any counter-evidence."); *cf. Taylor v. Kimmel*, No. 19-2123, 2020 U.S. App. LEXIS 20443, at *10-12 (6th Cir. Jun. 30, 2020) (finding a material issue of fact as to retaliatory motive where a prison official did not submit an affidavit explaining his reasons for issuing a misconduct ticket and the underlying charge raised genuine factual questions).

So Fronczak is entitled to summary judgment on the portion of the First Amendment retaliation claim stemming from the December 13, 2022 law library incident.[1]

### 2.    March 15 and 29, 2023 Incidents

Next, Annabel asserts that Fronczak threatened him on two different occasions. On March 15, 2023, Fronczak allegedly confronted Annabel in the law

---

[1] Annabel's related argument that the deprivation of his law library access privileges from December 13, 2022 through February 13, 2023 stemmed from Fronczak's retaliatory motive is unavailing as well. MDOC policy authorized the prison warden to impose this restriction after Annabel accepted responsibility for the Class III misconduct violation. *See* MDOC Policy Directive 05.03.115(W) ("If the prisoner is found guilty of the misconduct, they may be barred from further access to the library or [electronic law library] for a period of time not to exceed 180 days."); (ECF No. 7, PageID.53, ¶¶ 14, 16; ECF No. 64-6, PageID.566, ¶ 6; ECF No. 64-8 PageID.685-89).

library and yelled that he would issue him another misconduct ticket if Annabel continued to file grievances. (ECF No. 7, PageID.54, ¶ 21).   Another incident occurred on March 29, when Fronczak allegedly yelled a similar statement at Annabel. (*Id.*, PageID.54, ¶ 22).  This time, Annabel left the law library voluntarily to "avoid Fronczak." (*Id.*).

Since the record does not show that Fronczak took any adverse action against Annabel because of these interactions, the portion of the First Amendment retaliation claim traceable to these two incidents cannot withstand summary judgment.[2] *See Beal v. Minard*, No. 22-2153, 2023 U.S. App. LEXIS 14401, at *6 (6th Cir. Jun. 8, 2023) (deciding that verbal threats of issuing a misconduct ticket was not an adverse action "that would deter a person of ordinary firmness from engaging in constitutionally protected activity.").

3.     March 2023 Misconduct Ticket

Annabel further alleges that Fronczak issued him another misconduct ticket for insolence in March 2023, after Fronczak intercepted a kite that Annabel had sent to another law librarian complaining about Fronczak's "psychopathic screaming."

---

[2] Insofar as Annabel contends (and it is unclear whether he does) that Fronczak issued him a misconduct ticket and barred him from the law library temporarily after the March 29 incident, there is no admissible evidence supporting these allegations. (ECF No. 64-5, PageID.562, ¶ 4).

(ECF No. 7, PageID.54, ¶ 23).  This portion of the First Amendment retaliation claim falters on two grounds.

*One* – aside from Annabel's own testimony, there is no evidence that Fronczak ever issued a misconduct ticket to Annabel in March 2023. (ECF No. 64-5, PageID.562, ¶ 4).  Even Annabel testified that he never received a copy of the ticket, he could not recall when Fronczak had issued the ticket, and he could not identify which prison official(s) reviewed it and, ultimately, dismissed it. (ECF No. 66, PageID.814-15, Tr. 19:6-7, 20:7-10, 21:5-9).

*Two* – assuming Fronczak did issue the March 2023 misconduct ticket, Annabel acknowledges that prison officials dismissed the charge upon further review. (ECF No. 7, PageID.54, ¶ 23; ECF No. 66, PageID.814-15, Tr. 19:4-5, 20:20-22, 21:1-4).  And misconduct tickets that are subsequently dismissed or withdrawn do not constitute adverse actions under a First Amendment retaliation theory. *See Jackson v. Hamlin*, 61 F. App'x 131, 133 (6th Cir. 2003) (no adverse action under the First Amendment where the inmate's "misconduct conviction was overturned on appeal and no sanctions were imposed."); *see also Bey v. Alcodray*, No. 17-1945, 2018 U.S. App. LEXIS 8549, at *8-9 (6th Cir. Apr. 3, 2018) (finding no clearly established precedent that a dismissed misconduct charge qualifies as an adverse action necessary to sustain a First Amendment retaliation claim); *Bridges v.*

11

*Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action.").

As a result, the March 2023 misconduct ticket provides an inadequate basis for asserting a First Amendment retaliation claim.

> 4. Post-February 13, 2023 Deprivation of Law Library Access

Annabel points to the restrictions on his law library access from February 13, 2023 through April 2023 as the final indicator that Fronczak retaliated against him for his past complaints and grievances. (ECF No. 7, PageID.55, ¶ 24). But Annabel can only show three occasions where (1) Fronczak may have denied his requests for a law library call-out, and (2) Annabel properly exhausted his administrative remedies as to those incidents – March 1, April 19, and April 20, 2023. (ECF No. 64-8, PageID.652-58, 665-68). And denying call-out requests on three separate occasions, spanning over a month, is not "consistent" and "repeated" enough to rise to the level of an adverse action. *Thomas v. Burt*, No. 21-1715, 2023 U.S. App. LEXIS 18683, at *5-6 (6th Cir. Jul. 21, 2023) (reversing dismissal of complaint because "[t]he consistent, repeated denial of access to the law library and legal materials that Thomas alleges at least plausibly amounts to action that would deter a person of ordinary firmness from engaging in protected conduct."); *see also Meeks v. Schofield*, 625 F. App'x 697, 702 (6th Cir. 2015) (suggesting that "denial of access to the library on one occasion" was "de minimis conduct that did not constitute

adverse action."); *Annabel v. Washington*, No. 24-97, 2024 U.S. Dist. LEXIS 43719, at *13-14 (W.D. Mich. Mar. 13, 2024) (holding that failure to receive law library call-outs on "two occasions . . . do not permit the Court to infer that [the plaintiff] was consistently and repeatedly denied law library access.").

Even if the denial of these three call-out requests is an adverse action, Fronczak remains entitled to qualified immunity.

Federal courts use a two-pronged test to evaluate whether qualified immunity is appropriate. The relevant inquiry is (1) "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated," and (2) "whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quotation omitted). While the plaintiff bears the ultimate burden of showing that the official is not entitled to qualified immunity, *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006), the defendant has the initial burden of showing that his conduct was objectively reasonable under then-existing law. *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004).

The burden then shifts to the "plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000); *see also Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The violated right

must have been "clearly established at the time" of the incident. *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019). That means courts may "consider only the legal rules existing when the challenged conduct occurred, not legal rules adopted by later caselaw." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (quotation omitted); *see also Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022) (requiring courts to "look to the law at the time the official acted" when ascertaining whether a right is clearly established). Those rules must derive from either a United States Supreme Court opinion or the Sixth Circuit Court of Appeals' own published decisions. *See Bell v. City of Southfield*, 37 F.4th 362, 367-68 (6th Cir. 2022).

Courts may address the qualified immunity prongs in any order but need not reach both elements. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012). This is because qualified immunity shields government officials from civil damages if either prong is not satisfied. *Hall v. Sweet*, 666 F. App'x 469, 474 (6th Cir. 2016). In the First Amendment retaliation context, "a qualified-immunity defense can succeed based on just one of the claim's three elements," *i.e.*, protected speech, adverse action, or causation. *Kennedy v. Smith*, No. 25-1880, 2026 U.S. App. LEXIS 11350, at *8 (6th Cir. Apr. 20, 2026); *see also Josephson v. Ganzel*, 115 F.4th 771, 789-90 (6th Cir. 2024).

14

Qualified immunity is proper here.  Since there is no published Sixth Circuit decision addressing "a fact pattern similar enough to have given fair and clear warning to officers about what the law requires," it would not have been clearly established to a reasonable prison official in March through April 2023 (or at any other point in time) that denying an inmate's request for a call-out to the prison law library, on three separate occasions, constitutes an adverse action for First Amendment retaliation purposes. *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018).

Because none of the theories underlying the First Amendment retaliation are viable, Fronczak is entitled to summary judgment on that cause of action.  Annabel's second and third objections are overruled and the related portions of the report and recommendation are accepted and adopted.

      5.      State Law Claims

Lastly, the magistrate judge recommended that the Court decline to exercise supplemental jurisdiction over the remaining state law defamation and gross negligence claims in the event it dismisses the only federal cause of action, *i.e.*, the First Amendment retaliation claim. (ECF No. 73, PageID.902-03).  Although Annabel does not object to the recommended disposition, the Court will reject this portion of the report and recommendation and dismiss the state law claims outright. *See Thomas*, 474 U.S. at 154; Wright & Miller, § 3070.2.

Fronczak is entitled to summary judgment on the defamation claim. His statement in the misconduct ticket – that Annabel disobeyed his instructions to remove his jacket in the prison law library – is absolutely privileged from liability. *See Couch v. Schultz*, 193 Mich. App. 292, 296-297 (1992) (holding that a corrections officer's accusation in a "major misconduct report" that inmates engaged in illicit sexual contact was absolutely privileged from a defamation suit).

Summary judgment is also warranted on the gross negligence claim. Annabel's allegation that Fronczak should be held liable for "intentionally disregarding a duty to Plaintiff not to be recklessly accused of misconduct in the law library" is merely a reformulation of his defamation claim, just labelled with a heightened culpable mental state. (ECF No. 7, PageID.55, ¶ 27). *See Vincent Johnson v. Mich. Minority Purchasing Council*, 341 Mich. App. 1, 17 (2022) (stating that defamation requires proof of "fault amounting at least to negligence on the part of the publisher."). He cannot employ this tactic to skirt the absolute privilege to which Fronczak's statements are otherwise entitled. *See Couch*, 193 Mich. App. at 296-297. Both claims must, therefore, be dismissed. Accordingly,

IT IS ORDERED that Annabel's objections to the magistrate judge's January 14, 2026 report and recommendation (ECF No. 74) are sustained in part and overruled in part.

16

IT IS FURTHER ORDERED that the January 14, 2026 report and recommendation (ECF No. 73) is accepted and adopted in part and rejected in part.

IT IS FURTHER ORDERED that Fronczak's motion for summary judgment (ECF No. 64) is granted.

Dated: May 4, 2026                         s/ Robert J. White
                                           Robert J. White
                                           United States District Judge